***NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MALANI MILLER, formerly known as Dominque Lemons,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONS OFFICER BERRIOS, et al.,<br><br>Defendants. | : | Civil Action No. 21-9912 (SDW-CLW)<br><br>**OPINION** |

**WIGENTON**, District Judge:

Presently before the Court is the joint motion for summary judgment by Corrections Officer Berrios, Corrections Officer Garcia, Corrections Officer DeFrancesco, and Sgt. Grier ("Defendants"), under Federal Rule of Civil Procedure 56. (ECF No. 42). Also before the Court is Pro Se Plaintiff Malani Miller's[1] ("Plaintiff") opposition to Defendants' joint motion for summary judgment (ECF No. 57), and Defendants' reply brief (ECF No. 58). For the following reasons, this Court: (1) reserves the issue of PLRA exhaustion for judicial fact-finding after supplemental briefing; (2) grants Defendants' motion for summary judgment on Plaintiff's New Jersey common law claims; (3) grants Defendant Sergeant Grier's motion for summary judgment on Plaintiff's excessive force claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S. §10:6-2; and (4) denies the remainder of Defendants' motion for summary judgment.

[1] The original complaint in this matter was brought by Dominque Lemons, who later legally changed her name to Melani Miller. (ECF Nos. 35, 49). More recently, Plaintiff spells her first name "Malani," which the Court uses here. (ECF Nos. 53, 54, 57).

## I. PROCEDURAL HISTORY

Plaintiff filed her original complaint on or about April 23, 2021. (ECF No. 1). This Court granted Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and permitted the complaint to proceed. (ECF No. 2). On various dates in June and July 2021, summons were returned as executed on Defendants Berrios, Garcia, DeFrancesco and Sergeant Grier. (ECF No. 5). Service was attempted but not made on Corrections Officer Millin. (*Id.* at 5). When Defendants failed to timely answer or otherwise respond to the complaint, the Clerk entered default in Plaintiff's favor. (ECF No. 6). This Court granted Defendants' motions to set aside default, and directed Defendants to file an answer or otherwise respond to the complaint. (ECF Nos. 14, 19).

On January 13, 2022, Defendants Berrios, Garcia and DeFrancesco filed an answer to the complaint. (ECF No. 17). Defendant Grier filed an answer to the complaint on February 17, 2022. (ECF No. 25). On February 8, 2022, this Court denied without prejudice Plaintiff's motion for appointment of pro bono counsel. (ECF No. 24). A pretrial scheduling order was entered on March 2, 2022. (ECF No. 9). Pursuant to that order, fact discovery was open until October 31, 2022. (ECF No. 9 at 1). On August 11, 2022, Defendants sought permission to file a joint motion for summary judgment for failure to exhaust administrative remedies and to stay discovery pending the summary judgment motion. (ECF No. 33). This Court granted Defendants' request (ECF No. 34), and granted Defendants' subsequent request to raise additional grounds for summary judgment in their joint motion. (ECF Nos. 37, 39, 41, 45).

On November 18, 2022, Defendants filed their joint motion for summary judgment, raising the following grounds for relief: (1) Plaintiff's excessive force claims against Defendants Berrios, Garcia and DeFrancesco fail because Plaintiff has not described each defendant's personal

involvement in the alleged excessive force; (2) Plaintiff's failure to intervene claim against Sergeant Grier fails because Plaintiff did not establish an excessive force claim; (3) Plaintiff's excessive force claim against Sergeant Grier fails because Sergeant Grier reasonably employed pepper spray against Plaintiff; (4) Plaintiff failed to exhaust administrative remedies for her claims under 42 U.S.C. § 1983; and (5) Plaintiff's New Jersey common law claims fail because Plaintiff failed to comply with the procedural requirements of the New Jersey Tort Claims Act. (ECF No. 42).

On February 2, 2023, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment, but she alleged that she had never received the summary judgment motion and supporting materials. (ECF No. 49 at 1). Defendants re-served their summary judgment motion on Plaintiff. (ECF Nos. 46, 47). This Court granted Plaintiff permission to file an amended opposition to Defendants' motion for summary judgment. Several letters concerning Plaintiff's opposition brief crossed in the mail, which resulted in Plaintiff filing two identical amended briefs in opposition to summary judgment. (ECF Nos. 50, 52, 53). Therefore, this Court will cite to Plaintiff's opposition brief and supporting materials filed under Docket Entry No. 57. Finally, Defendants filed a reply brief on April 18, 2023. (ECF No. 58).

## II.   UNDISPUTED MATERIAL FACTS

Local Rule 56.1(a) provides, in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents

> submitted in connection with the motion, if necessary to substantiate the factual basis for opposition.

Plaintiff did not follow this local Rule. "A document filed pro se" however "is 'to be liberally construed[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Therefore, this Court derives the undisputed material facts by comparing Defendants' Statement of Material Facts not in Dispute (ECF No. 42-2) and Plaintiff's Certification in Opposition to Summary Judgment (ECF No. 57-1). Only those disputed material facts that are properly supported by affidavit or other documents will be considered.

The following facts, therefore, are undisputed. Plaintiff is a convicted state prisoner who was confined in Essex County Jail in Newark, New Jersey from February 20, 2020 until August 14, 2020. (ECF No. 42-9 at 1-2). At all times relevant to the complaint, Defendants were employed as corrections officers [Berrios, Garcia and DeFrancesco] and a sergeant [Grier] at the Essex County Jail, by the County of Essex. (ECF No. 42-8, ¶ 4). Plaintiff filed a complaint on April 23, 2021, alleging claims against Defendants under New Jersey common law, 42 U.S.C. § 1983, and the NJCRA, N.J.S. § 10:6-2 *et seq*. (ECF No. 1). In the complaint, Plaintiff alleges that on or about May 6, 2020, Defendants used excessive force against her in the D-Pod housing unit in Essex County Jail, by deploying chemical spray against her, slamming her face and body on the concrete floor, and stomping on her leg. (ECF No. 1, ¶¶ 1-3). Sergeant Grier allegedly deployed the chemical spray and then failed to intervene when her subordinates slammed Plaintiff to the ground and stomped on her leg. (*Id.*, ¶ 4.) Plaintiff suffered a physical injury and emotional distress. (*Id.*, ¶¶ 10, 13). As a result of the physical altercation with Defendants, Plaintiff was found guilty of violating prison rules. (ECF Nos. 42-12 at 12, 42-13 at 1). Plaintiff did not file a notice of tort claim in Essex County before filing the complaint. (ECF No. 42-14).

Upon admission to Essex County Jail, all inmates are provided with a copy of "Inmate

Handbook & Disciplinary Rulebook" ("Inmate Handbook"). (ECF No. 42-7, ¶ 3 and 42-7 at 1). The Inmate Handbook describes the procedure for inmates to file formal grievances relating to any administrative aspect of the inmate's confinement. (*Id.*) The Inmate Handbook is also accessible on the computer tablets available to inmates at Essex County Jail. (*Id.*, ¶ 4.) There is a two-step process to exhaust administrative remedies. (ECF No. 42-7 at 45-49). The formal grievance process begins when the inmate submits the prescribed grievance form on paper or electronically. (ECF No. 42-7, ¶ 5.) The Grievance Coordinator sends the grievance to the appropriate person to obtain a written response for the inmate. (*Id.*) If the inmate is dissatisfied with the response, the inmate must appeal by submitting a grievance, in paper form or electronically, for a final decision by the warden. (ECF No. 42-6, ¶ 6; ECF No. 42-7 at 45-49). Formal grievances and administrative requests submitted by inmates are documented in a computerized tracking database, referred to as the "Inmate Grievance System" and maintained by the Grievance Coordinator. (*Id.*, ¶ 7). On February 24, 2022, a search was performed of the Inmate Grievance System for all grievance forms and administrative requests submitted by Plaintiff while in Essex County Jail. (*Id.*, ¶ 8.) The search produced nine grievance forms and fifteen administrative requests, none of which related to Plaintiff's altercations with Defendants in May 2020. (*Id.*, ¶ 9; ECF No. 42-6 at 62-85).

In response to the following interrogatory request by Defendant Grier: "[i]dentify and describe all grievances or complaints you filed regarding the incident before the filing of this lawsuit," Plaintiff responded under oath, "[a]ll grievances were submitted electronically and Plaintiff does not have a copy of any such grievances." (ECF No. 42-4, ¶¶ 3-4; ECF No. 42-5 at ¶ 5). Plaintiff asserts that she exhausted administrative remedies to the best of her ability. (ECF No. 57-1, ¶ 8). Plaintiff was last confined in Essex County Jail on August 14, 2020, and administrative remedies at Essex County Jail are no longer available to her. (*Id.*, ¶ 9.) Plaintiff

states she is not pursuing a claim under the New Jersey Tort Claims Act, but rather under the NJCRA and § 1983. (ECF No. 42-4, ¶ 10; ECF No. 57-1, ¶ 10). Sergeant Grier sprayed OC spray on Plaintiff, but Plaintiff is uncertain which defendant stomped on her leg after she was slammed to the ground. Therefore, she is alleging defendants acted in concert and jointly inflicted injuries on her. (ECF No. 57-1, ¶¶ 11, 15). Plaintiff seeks further discovery on the alleged incident of excessive force. (*Id.*, ¶ 16). According to Defendants' records, the incident occurred on May 14, 2020. (ECF Nos. 42-9, 42-10, 42-11, 42-12, 42-13). Plaintiff filed the complaint after she was transferred to Edna Mahan Correctional Facility, and she remains incarcerated in that facility. (ECF Nos. 1, 35).

## III. DISCUSSION

### A. Legal Standard

A court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003) (citing *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (in turn quoting *Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002))). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A party asserting that a fact … is genuinely disputed must support the assertion

by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B). A verified complaint, sworn under oath by a *pro se* plaintiff,[2] "may be treated as an affidavit for purposes of Federal Rule of Civil Procedure 56(e)." *Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (citing, *e.g., Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion).

If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion … [or] grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" *Blunt*, 767 F.3d at 265 (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Paladino v. Newsome*, 885 F.3d 203, 209–10 (3d Cir. 2018) (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241 241 (3d Cir. 2004) (citations omitted). Rather, "the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Id.* at 210 (quoting *Marino*, 358 F.3d at 247) (in turn quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

[2] Plaintiff signed her complaint under penalty of perjury. (ECF No. 1 at 7).

255 (1986)). Even if the information is self-serving, "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." *Paladino*, 885 F.3d at 209 (quoting *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314, 320 (3d Cir. 2014)).

"[J]udges may resolve factual disputes relevant to the [PLRA] exhaustion issue without the participation of a jury." *Id.* at 210 (quoting *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013)). "[N]otice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion under *Small*." *Id.* at 211. A district court must "notify the parties that it will consider exhaustion in its role as a fact finder…." *Id.* A full evidentiary hearing may not be required, but "a district court must at least provide the parties with an opportunity to submit materials relevant to exhaustion that are not already before it." *Id.*

**B. New Jersey Common Law Tort Claims**

Under the New Jersey Tort Claims Act ("NJTCA"), "no action shall be brought against a public entity or *public employee* under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S. § 59:8-3 (emphasis added). Prior to filing a lawsuit, plaintiffs must timely present their tort claims to the appropriate local entity, no longer than two years after the claim accrued. N.J.S. § 59:1-1 *et seq.* In response to Defendants' motion for summary judgment, Plaintiff certified under oath that she is bringing her claims under § 1983 and the NJCRA, not the NJTCA. (ECF No. 57-1, ¶ 10.)[3] Plaintiff expressly alleged common law claims against Defendants in her complaint. (ECF No. 1,

[3] Plaintiff, in her opposition brief, may be asserting that her common law claims of assault are not governed by the NJTCA because assault involves willful conduct. (ECF No. 57 at 11-13). The New Jersey Supreme Court rejected the same argument in *Velez v. City of Jersey City*, 850 A.2d 1238, 1245 (N.J. 2004) (holding the plaintiff's common law claims of assault and battery were subject to the notice of claim requirements of the NJTCA).

Preliminary Statement and Count Two, ¶ 12). Such claims are subject to the NJTCA. *See*, *Velez*, *supra* n. 3. Therefore, the Court will grant Defendants' motion for summary judgment on Plaintiff's New Jersey common law claims, because the undisputed material facts establish Plaintiff did not file a notice of tort claim pursuant to N.J.S. §§ 59:1-1 *et seq.* (ECF No. 42-2, ¶ 11; ECF No. 42-14).

**C. Exhaustion of Administrative Remedies Under 42 U.S.C. § 1997e(a)**

42 U.S.C. § 1997e(a) (describing "PLRA exhaustion") provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." PLRA exhaustion is an affirmative defense, and the burden of proof is on defendants. *Paladino v. Newsome*, 885 F.3d 203, 207 (3d Cir. 2018). PLRA exhaustion is mandatory, and inmates must exhaust all available remedies. *Ross v. Blake*, 578 U.S. 632, 641 (2016). Exhaustion "requires compliance with 'deadlines and other critical procedural rules,'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). Remedies are unavailable and need not be exhausted when: 1) the administrative grievance procedure "operates as a simple dead end[;]" (2) the administrative grievance procedure is "so opaque that it becomes, practically speaking, incapable of use[;]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

Defendants point out that in Plaintiff's response to Defendants' interrogatory concerning PLRA exhaustion, Plaintiff stated she filed all grievances electronically and did not retain a copy. (ECF No. 42-5 at 53). Plaintiff also provided a sworn certification in response to

Defendants' motion for summary judgment, where she stated that she exhausted administrative remedies to the best of her ability, and she no longer has access to the administrative remedy program at Essex County Jail, because she was transferred to Edna Mahan Correctional Facility. (ECF No. 57-1, ¶¶ 8, 9). Defendants submitted the sworn certification of Philip Flor, stating a search was performed on Essex County's grievance database, and the search revealed that while in Essex County Jail, Plaintiff never filed a grievance or appeal concerning the subject matter of the complaint. (ECF No. 42-5, ¶¶ 8, 9.)

This Court, therefore, gives the parties notice, pursuant to *Paladino* and *Small*, *supra*, that it will resolve factual disputes regarding Plaintiff's exhaustion of administrative remedies. The Court will reserve decision on this issue, giving the parties 30 days to submit any other evidence, including affidavits, that they wish the Court to consider on the exhaustion issue. *See*, Fed. R. Civ. P. 56(e)(1). Defendants shall describe the reliability of their recordkeeping system for exhaustion of administrative remedies. Plaintiff shall describe approximately when and to whom, if at all, she electronically filed grievances at Essex County Jail regarding the subject matter of her complaint in this action. Plaintiff shall also explain how she exhausted administrative remedies "to the best of her ability." If necessary, after receipt of the parties' additional materials, an evidentiary hearing will be scheduled. For the sake of completeness, this Court will address Defendants' alternative bases for summary judgment, recognizing that exhaustion of administrative remedies is a mandatory, jurisdictional requirement for § 1983 claims.

**D. Whether Sergeant Grier is entitled to summary judgment on Plaintiff's excessive force claim under § 1983 and the NJCRA**

"When evaluating a claim brought under § 1983, [courts] must first 'identify the exact contours of the underlying right said to have been violated" in order to determine "whether

[the plaintiff] has alleged a deprivation of a constitutional right at all." *Natale*, 318 F.3d at 581 (alteration added) (quoting *County of\Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). [T]he analysis then shifts to a determination of whether the state actor … can be held liable for that violation." *Id.* (citing *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)).

There is no dispute that Defendants were state actors for purposes of Plaintiff's § 1983 and NJCRA claims. Plaintiff's § 1983 and NJCRA claims are brought under the Eighth Amendment of the U.S. Constitution, and the analogous provision of the New Jersey Constitution.[4] The Third Circuit has explained "the pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining a claim of excessive force, courts should consider the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

*Id.* (citing *Brooks*, 204 F.3d at 106, citing *Hudson*, 503 U.S. at 7).

Defendants concede that Sergeant Grier deployed pepper spray on Plaintiff three times, without conceding this was an excessive use of force. (ECF No. 42-2, ¶¶ 23, 26). On summary

---

[4] The NJCRA, N.J.S. § 10:6-2(c), was modeled on 42 U.S.C. § 1983, and courts have repeatedly construed NJCRA claims as nearly identical to § 1983. *See*, *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443-44 (D.N.J. June 29, 2011) (collecting cases); *Tumpson v. Farina*, 218 N.J. 450, 474 (2014). "The interpretation given to parallel provisions of Section 1983 may provide guidance in construing our Civil Rights Act." *Tumpson*, 218 N.J. at 474. Therefore, this Court will treat the § 1983 and NJCRA claims alike.

judgment, this Court must accept as true Plaintiff's sworn statement that she was passive and nonviolent in her resistance to the orders to return to her cell, and that she was not attempting to leave the tier. Yet, Plaintiff has not disputed the following facts describing the circumstances leading up to the incident, as established by Defendants' submissions:

> On May 13, 2020, Plaintiff was evaluated by a Mental Health Counselor and placed on constant observation after Plaintiff complained of hearing voices, not sleeping for days for fear that someone may come into her cell and kill her, and stating that she would rather kill herself first before they kill her. (ECF No. 42-13 at 84-85).
>
> On May 14, 2020, at 1205 hours, Sgt. Grier was notified that Plaintiff was allowed to receive a mattress but was to remain on constant observation. (ECF No. 42-9 at 9, and 42-10 at 1).
>
> On May 14, 2020, when Defendant DeFrancesco arrived at Plaintiff's cell door at approximately 1255 hours to deliver a mattress to her, Plaintiff pushed DeFrancesco out of the way and exited her cell despite being ordered by Defendant Berrios not to exit. (*Id.*)
>
> Defendant Sgt. Grier responded to the scene at approximately 1300 hours after receiving a telephone call from Berrios notifying her that Plaintiff had exited her cell and was refusing to return to her cell to lock in. (ECF Nos. 42-9 at 3-5, 42-10 at 1).
>
> Sgt. Grier repeatedly ordered Plaintiff to return to her cell to be locked in. (ECF Nos. 42-9 at 7, 42-10 at 1). Sgt. Grier then ordered DeFrancesco Berrios and Defendant Garcia to escort Plaintiff. (ECF Nos. 42-9 at 6, 42-9 at 7, 42-9 at 9, 42-10 at 1).

(ECF No. 42-2, ¶¶ 18-22).

According to Plaintiff, she passively resisted. (ECF No. 57-1, ¶ 14). The following statements of undisputed material facts asserted by Defendants were not disputed by Plaintiff in her verified complaint (ECF No. 1) or in her certification in opposition to summary judgment (ECF 57-1):

> Defendants then attempted to return Plaintiff to her cell by pushing her upper torso and upper extremities to push her inside her cell but Plaintiff continued to resist. (ECF Nos. 42-9 at 7, 9 and 42-10 at 1). Then Sgt. Grier disbursed two bursts of pepper spray to Plaintiff's facial region and initially Plaintiff appeared not to be affected by the pepper spray. (ECF No. 42-9 at 4-5).

> Once the pepper spray began to take effect, Plaintiff proceeded towards a table in the area and took a seat but still refused to obey orders to return to her cell. (*Id.*)
>
> A Code Blue was called to dispatch an emergency response team to provide assistance and the shift commander ordered Sgt. Grier to remove all officers from the tier where Plaintiff's cell was located. (*Id.*)
>
> Sgt. Grier then ordered all officers to exit the tier. (ECF Nos. 42-9 at 4-9, 42-10 at 1).

(ECF No. 42-2, ¶¶ 23-26).

According to Plaintiff, she was not attempting to exit the tier, rather, she was stumbling around because her vision was impaired by the pepper spray. (ECF No. 57-1, ¶ 15). Plaintiff, nevertheless, has not disputed that she passively resisted orders to return to her cell or that:

> Sgt. Grier administered another burst of pepper spray, making contact with Plaintiff's face, while the officers brought [slammed, according to Plaintiff] Plaintiff to the ground. (ECF No. 42-9 at 4, 5, 9). DeFrancesco injured his back as a result of Plaintiff falling backwards into him. (ECF No. 42-9 at 9).
>
> The response team arrived at approximately 1306 hours and secured Plaintiff in handcuff restraints. (ECF Nos. 42-9 at 4-6, 42-10 at 2-6, 42-11 at 2). At approximately 1310 hours a suited team arrived and escorted Plaintiff to the Jail's medical unit for evaluation. (ECF Nos. 42-9 at 4-5, 7, 9; 42-11 at 3-5; 42-12 at 2).
>
> At about the time of her admission to the Jail in February 2020, Plaintiff's height and weight[,] as recorded by the Jail's medical staff[,] was 67 inches and 303 pounds. (ECF No. 42-13 at 5).

(ECF No. 42-2, ¶¶ 26, 27, 29).

Because Plaintiff exited her cell and refused multiple orders to return, and then passively resisted the physical efforts of officers to return her to her cell, no reasonable jury could conclude that Sergeant Grier's conduct of spraying three bursts of pepper spray on Plaintiff was done maliciously and sadistically to cause harm. *See, Passmore v. Ianello*, 528 F. App'x 144, 148 (3d Cir. 2013) (holding corrections officer's use of pepper spray on inmate who repeatedly refused to follow orders was reasonable use of force); *Banks v. Meck*, 531 F. App'x 205, 208 (3d Cir. 2013) (finding use of pepper spray was reasonable when inmate refused to follow repeat

orders to evacuate cell); *Drumgo v. Little*, 711 F. App'x 73, 76 (3d Cir. 2017) (finding officer did not use excessive force by spraying a prisoner with pepper spray when he refused to return to his cell); *Jones v. Wetzel*, 737 F. App'x 61, 65 (3d Cir. 2018) (finding the use of force was reasonable where [“t]he administration of pepper spray was limited to the amount necessary for [the prisoner] to begin responding to the compliance team and was stopped as soon as [the prisoner] began complying with orders.)

Even passive resistance posed some risk of harm to the officers who were properly tasked with returning Plaintiff to her cell when she refused to do so on her own. The Eighth Amendment, under § 1983 and the NJCRA, permit prison staff to use reasonable force to obtain compliance with orders. *Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009) (finding prison staff may use “the amount of force necessary to control” a prisoner’s movement, when the prisoner refuses to comply with an order.) Defendants have shown they were unable to return Plaintiff to her cell after Sergeant Grier’s initial deployment of OC spray; therefore, a third deployment of the spray was not unreasonable. Further, Plaintiff does not allege injury beyond the immediate discomfort from deployment of the pepper spray; her alleged injuries are related to her allegation that Defendants Berrios, Garcia and DeFrancesco slammed her to the ground and stomped on her legs, causing persistent pain in her left knee, severe scratches, bruised legs, and hair was yanked out of her head. (ECF No. 57-1, §§ 12, 14). Therefore, this Court will grant Sergeant Grier’s motion for summary judgment on Plaintiff’s excessive force claim under § 1983 and the NJCRA.

**E. Whether Defendants Berrios, Garcia and DeFrancesco are entitled to summary judgment on Plaintiff’s excessive force claims under § 1983 and the NJCRA**

Defendant Officers Berrios, Garcia and DeFrancesco assert they are entitled to summary judgment because Plaintiff has not identified which defendant committed which act of excessive

force against her, and plaintiffs are required to establish a defendant's personal involvement in a constitutional violation. (ECF No. 42-3 at 11). Plaintiff submits she has alleged sufficient facts to state a claim of excessive force because Berrios, Garcia and DeFrancesco all took part in the excessive use of force, slamming her to the ground, with one of them stomping on her leg. (ECF No. 57 at 5-6). She alleges they acted in concert and are jointly and severally liable. (ECF No. 57 at 6). In their reply brief, Defendants outline Plaintiff's version of events, including her alleged passive resistance to Defendants' attempts to return her to her cell from the tier, and conclude that, even in the light most favorable to Plaintiff, defendants' use of force was reasonable. (ECF No. 58 at 23-24).

In her sworn certification, Plaintiff states:

> The Statement of Material Facts by defendant Sergeant Grier states that I became "combative" but does not state that I threw punches or kicked at staff, or attempted to throw or swing any objects at staff. I deny having done any of those things.
>
> I state here that I did not throw any punches or kick at staff during this incident on May 14, 2020. I did not throw any objects at custody staff. My resistance, if any, was passive and not violent. I was slammed to the ground by several officers, whom I now know to be Officers Berrios, DeFrancesco and Garcia. One of these officers stomped on my leg during this altercation. This physical force inflicted injuries upon me in the form of severe scratches, bruised legs, which was stomped upon and loss of hair which was yanked out of my head.
>
> I was not intentionally and deliberately trying to leave the tier during this event. Rather, I had been sprayed with OC spray by Sgt. Grier and my vision was severely impended [sic]. I was blundering around the tier and was uncertain as to exactly where I was and the direction in which I was moving.

(Pl's Certification ¶¶ 13-15, ECF No. 57-1). Accepting Plaintiff's allegation of passive resistance, this Court cannot determine, as a matter of law, that Defendants' use of force by allegedly slamming Plaintiff to the ground and stomping on her legs was reasonable. Moreover,

the extent of each officer's participation in the alleged excessive force, including which defendant stomped on Plaintiff's legs, is a "classic factual dispute to be resolved by the fact finder." *Smith*, 293 F.3d 641, 650 (3d Cir. 2002). Thus, neither the facts taken in the light most favorable to Plaintiff, nor Plaintiff's failure to identify which defendant stomped on her legs do not entitle Defendants Berrios, DeFrancesco or Garcia to summary judgment.

**F. Whether Sergeant Grier is entitled to summary judgment on Plaintiff's failure to intervene claims under § 1983 and the NJCRA**

Defendant Grier seeks summary judgment on Plaintiff's Eighth Amendment failure to intervene claim because Plaintiff failed to establish a necessary element of the claim, that Defendants Berrios, DeFrancesco and Garcia used excessive force against her. (ECF No. 42-3 at 12-13). This Court has found a disputed issue of material fact concerning whether Defendants Berrios, DeFrancesco and Garcia employed excessive force against Plaintiff on May 14, 2020. Therefore, Defendant Grier is not entitled to summary judgment on Plaintiff's failure to intervene claim. *See*, *Smith*, 293 F.3d at 250-51 (a corrections officer may be liable for failing to intervene in another officer's use of excessive force; if the officer had a realistic and reasonable opportunity to intervene).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (ECF No. 67) is granted in part, denied in part, and reserved in part.

An appropriate order follows

DATE:______May 15______, 2023

/s/ Susan D. Wigenton

Hon. Susan D. Wigenton,
United States District Judge